

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CIVIL NO. 00-00830-CIV-MORENO
Magistrate Judge Dubé

SERGIO RENDON, JOHNPAUL JEBIAN, CHRIS
LEONE, JOANN NORRIS, and KELLY-GREENE,
all individually and on behalf of all others
similarly situated,

      PLAINTIFFS,

          -vs-

VALLEYCREST PRODUCTIONS, LTD., and the
AMERICAN BROADCASTING COMPANIES, INC.,
a Delaware Corporation,

      DEFENDANTS.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Sergio Rendon, JohnPaul Jebian, Chris Leone, JoAnn Norris, and

Kelly-Greene, all individually and on behalf of all persons with disabilities ("Plaintiffs")

hereby responds to Defendants Valleycrest Productions, Ltd. and the American

Broadcasting Companies, Inc. ("Defendants") Motion to Dismiss, filed June 14, 2000,

and in opposition state as follows:

1. Plaintiffs' commenced this action by filing their Complaint on March 3, 2000.

On May 25, 2000, Plaintiffs filed an Amended Complaint.  Plaintiffs' received

Defendants' Motion to Dismiss Amended Complaint on June 15, 2000.  Plaintiffs' filed

and received an enlargement of time to file Defendants' Motion to Dismiss and Plaintiffs

herein file this Response.

2. This action arises under 42 U.S.C. § 12101 *et. seq.* (not under 42 U.S.C.

§12111 as stated in Defendants' Motion), based on Defendants' violations of Title III of

ORIGINAL

the **Americans with Disabilities Act of 1990** ("ADA"), where Title III requires that places of public accommodation and commercial facilities remove barriers to access and provide alternative services when barriers cannot be removed.

3. Plaintiffs will address each section in Defendants' Motion.

### MEMORANDUM OF LAW

**I. Summary of Facts and Claims in Amended Complaint**
**A. Summary of Facts**
**B. Summary of Claims**

4. Plaintiffs incorporate Defendants statements under their statement of facts and claims as being substantially correct.

**II. Standards of Review under Rule 12(b)(6)**

5. In response to Defendants rendition of 12(b)(6) standards, Plaintiffs agree and add that "[I]n ruling on an FRCP 12(b)(6) motion, the court may not decide disputed fact issues. Rather, the court must assume all material facts contained in the complaint are true." *Davis v. Monroe City. Bd. Of Educ.*, 526 U.S. 629, 119 S.Ct. 1661 (1999). The court must also indulge all inferences in favor of the plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Jones v. G.E. Co.*, 87 F.3d 209, 211 (7th Cir. 1996); *Doe v. Hillsboro ISD*, 81 F.3d 1395, 1401 (5th Cir. 1996). The court's task is simply to determine whether the plaintiff's complaint is legally sufficient to state a claim for relief. *See Doe*, 81 F.3d at 1401. The court should dismiss under FRCP 12(b)(6) only if the court can determine to a certainty that the plaintiff cannot prove any set of facts that would entitle it to relief under the allegations in its complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *Doe*, 81 F.3d at 1401-02. This standard is intended to be stringent and exacting because FRCP 12(b)(6) motions are strongly disfavored. Plaintiffs agree this should be the appropriate standard of review.

2

### III. The Americans with Disabilities Act

6. Defendants do not dispute that Plaintiffs are disabled, but maintain that this action should be dismissed because the qualifying rounds do not involve a place of public accommodation. In response, the ADA[1] requires that businesses or public accommodations [2] have an obligation to take necessary steps to ensure that no individual with a disability be excluded, denied services, segregated or otherwise treated differently than other individuals for a lack of auxiliary aids and services.[3] Here, the Defendants, Valleycrest Productions, Ltd. and American Broadcasting Companies, Inc., are missing the whole point of this lawsuit. They are the owners and/or operators of a business (a network television studio and quiz show) which solicits its contestants from the general public, in which these contestants compete to become a contestant on the show. The policies, procedures and guidelines to be a contestant are themselves discriminatory. They exclude three distinct class of disabled persons 1) the upward mobility impaired, which use voice commands to converse on a telephone; 2) the hearing and deaf community that utilize a TDD (telecommunication Device for the Deaf or referred to also as a TYY); and, 3) the visually impaired community that can not utilize a phone or can not utilize one in the necessary speedy and efficient manner to access the contestant process (See further explanations in paragraph #7). Therefore, since 1992, business or public accommodations are prohibited by the ADA from discrimination against otherwise qualified individuals with disabilities.[4] The

---

[1] "Americans with Disability Act of 1990, Pub. L. 101-336." The "ADA", which was enacted on July 26, 1990, provides comprehensive civil rights protection to individuals with disabilities. Areas of protection include employment, public accommodations, State and local governmental services, and telecommunications.

[2] Means a private entity that owns, leases (or leases to), or operates a place of public accommodation.

[3] Auxiliary Aids and Services include such services or devices as sign language interpreters, assistive listening headsets, television decoders, telecommunication devices for the deaf (TDD's), readers, taped texts, brailled materials, and large print materials.

[4] 42 USCA §§ 12132, 12182. *See also Shultz By and Through Shultz v. Hemet Youth Pony League, Inc.*, 943 F. Supp. 1222, 19 A.D.D. 562 (C.D. Cal. 1996) (plaintiff's motion for summary judgement on liability granted; ADA Title III violated by youth baseball league when disabled child was denied participation without any assessment or attempt to reasonably accommodate disabled child; public accommodation not limited to purely physical locations); *Anderson v. Little League Baseball, Inc.*, 794 F.

nondiscrimination requirements of the ADA[5] provide that public accommodations must provide full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations.  It is impermissible to deny participation, to provide participation of unequal benefit, or to provide activities separately, unless it is necessary to do so to provide the activity as effectively.[6]  Therefore, the Court should follow these noted decisions and keep in compliance with the spirit and intent[7] of the ADA; the Plaintiffs should be allowed to at least have the opportunity to participate.

**B.  Public Accommodations under Title III**

7.  Under Title III of the ADA public accommodations are prohibited from discriminating on the basis of disability[8].  Public accommodations that are covered by Title III include privately owned or operated commercial facilities, which are privately operated facilities whose operations affect commerce and which fall into **one of 12 general  categories**.  These general categories[9] are 1) places of lodging; 2) establishments serving food and drinks; 3) **places of exhibition or entertainment (applicable here)**; 4) **places of public gathering (applicable here)**; 5) sales or rental establishments; 6) **service establishments (applicable here)**; 7) specified public transportation; 8) public display or collection; 9) **places of recreation (applicable here)**; 10) **places of education (applicable here)**; 11) social service centers; and 12)

---

Supp. 342, 1 A.D.D. 1 (D. Ariz. 1992)(individual assessment should be made to determine whether Little League coach in wheelchair should be allowed on the playing field).

[5] The regulations are found at 28 CFR part 36 (public accommodations) and 28 CFR Part 35 (public services).

[6] 28 CFR §§ 36.201-36.203, 35.130, 35.149.

[7] The ADA is intended to provide not only equal treatment, but also equal opportunity.  This means that entities subject to ADA requirements are required to make reasonable accommodations, such as providing auxiliary aids and services. 42 USCA §§ 12102(1), 12111(8), 12112(5)(A), 12131(2), 12182(b)(2)(A)(ii).And policies and practices may have to be adjusted where it is reasonable to do so without fundamentally altering a program or unduly burdening the covered entity 42 USCA §§ 12111(10), 12143(c)(4, 12181(9), 12182(b)(2)(A)(ii)-(v).

[8] 42 USCA § 12181.  The regulations for Title III are found at 28 CFR part 36.  See also 56 Fed Reg 35544-691 (July 26, 1991) for background information.

[9] 42 USCA 12181(7); 28 CFR 36.104.

4

places of exercise or recreation (applicable here)[10].  Defendants list these twelve
categories in a misleading light, while they are correct, they fail to highlight them as
twelve general classes of "private entities" as public accommodations.  Example where
this game show would qualify as a public accommodation are as a facility of a 3) **place
of exhibition or entertainment**; a 4) **place of public gathering**; a 6) **service
establishment**; a 9) **place of recreation**; and possibly as a 10) **place of education**;
and finally as a 12) **place of exercise or recreation**.  The rules warn that while the list
of 12 is exhaustive, **the representative examples within each category are not.**
Therefore, this game show contestant process is a public accommodation and as such
must make reasonable modifications in their policies, practices, or procedures when
they are necessary to provide goods, services, facilities, privileges, advantages, or
accommodations to disabled individuals (28 CFR 36.302(d)).  Furthermore, this game
show contestant process under 28 CFR 36.303 must take steps to ensure that no
individual with a disability that substantially limits his or her ability to communicate is
discriminated against because of the absence of auxiliary aids.  Furthermore it is
understood that TDDs would have to be offered if an establishment "customarily offers
telephone service to its customers, clients, patients or participants on a more than an
incidental convenience basis."  A prime example in part 36 is where you have a building
in which access is controlled by a telephone (i.e., for security measures) the entity or
building facility would have to offer an effective alternative for individuals with impaired
hearing or speech.

    8.  The ADA in its language only exclude **private clubs**, except to the extent that
the facilities are made available to customers or patrons of a place of public

---

[10] 42 USCA § 12181(7).  *See also* Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1997 FED App. 230P (6th Cir.
1997) (rearrangement in any public accommodation offered by employer); Neff v. American Dairy Queen Corp., 58 F.3d 1063, 11
A.D.D. 92, 136 A.L.R. Fed. 671 (5th Cir. 1995, cert. denied. 116 S. Ct. 704, 133 L. Ed. 2d 660 (U.S. 1996) (franchisor not obligated
to enforce ADA compliance unless it effectively operates franchisee store; franchise agreement relevant to determination ; in this
case franchisor not obligated); Stoutenborough v. National Football League, Inc., 59 F.3d 580, 11 A.D.D. 117, 1995 FED App. 210P
(6th Cir. 1995), cert. denied, 116 S. Ct. 674, 133 L. Ed. 2d 523 (U.S. 1995) ...

accommodation[11] and **religious entities**, except where they rent space to other groups such as day care providers.[12]  In situations where the public has access, the activities of that group are covered by the ADA.[13]  There are no other exceptions.

9.  Where the facility has a mixed use (such as a hotel that is residential in part), the lodging portion is covered by the ADA, while the residential portion is covered by the Fair Housing Act (FHA).[14]

10.  While Defendant (on their page 8 and 9) want the naming of a physical location or physical structure where this discriminatory act takes place, Plaintiffs left Count IX as the place where, after the Defendants makes reasonable modifications to their policies, practices, or procedures under 28 CFR 36.302(d) <u>and</u> comply with 28 CFR 36.303 regarding auxiliary aids, <u>and</u> take the steps necessary to ensure that no individual with a disability that substantially limits his or her ability to communicate is discriminated against because of the absence of auxiliary aids, **then and only then**, can Round II and III[15] aspects be determined as being in compliance or not.  In addressing the utilization of the Title IV Communication requirements, since the telephone is only on a recorded message and since the Defendants don't offer a TDD/TYY as a accommodation, the third party alternative is moot.  One of the simple accommodation would be the offering of a TDD/TYY line to accommodate certain represented disabled individuals.

11.  In addressing the issue of a "place of public accommodation" must be a

---

[11]USCA § 12187.

[12]USCA § 12187.

[13]56 Fed Reg 35554 (July 26, 1991) ( interpretation of regulations).

[14]56 Fed Reg 35552 (July 26, 1991) ( interpretation of regulations). The Fair Housing Act is found at 42 USCA §§ 3601 *et seq.*

[15]See the Rules for the contest as attached to the Amended Complaint, Exhibit "A".

"physical place" then Plaintiffs request Defendants share with the Plaintiffs where the phone is answered (New York or California) and/or where in New York the show is taped. If Defendant shares these sites, Plaintiffs would more than willing to amend the complaint to name these physical sites and include them in the "process" review and inspection of the premises for other barriers (both physical and communicational).

12. In this is the 11th Circuit, and where the 11th Circuit has recently ruled in *Stevens v. Premier Cruises, Inc.*, 2000 WL 799798 (11th Cir. Fla.), on June 22, 2000, it should be noted that the 11th Circuit determined that parts of a cruise ship, are public accommodations. Further, from *Stevens* the Court ruled

> "[2] [t]hat a cruise ship may contain some of the enumerated public
> accommodations is not in doubt. ... Very important, Congress made no
> distinction—in defining "public accommodation"—based on the physical location
> of the public accommodation. ... Congress did intent that the ADA have a broad
> reach. See *Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Fla.*, 166
> F.3d 1126, 1128 (11th Cir,1999)(noting breadth of Title III); see also 42 U.S.C. §
> 12101(b) (noting that Congress intended—by enacting the ADA—to "provide a
> clear and comprehensive national mandate for the elimination of discrimination
> against individuals with disabilities" and invoked "the sweep of congressional
> authority"). And, both the Supreme Court and this Court have concluded
> previously that the ADA is applicable to contexts that may not have been
> particularly envisioned by Congress. See, e.g., *Pennsylvania Dep't of
> Corrections v. Yeskey*, 524 U.S. 206, 118S.Ct. 1952, 1956, 141 L.Ed.2d 215
> (1998)(applying ADA to alleged discrimination against disabled inmates in state
> prison system; *Florida Paraplegic Ass'n*, 166 F3d at 1128-29 (applying Title III of
> ADA to Indian reservations).

With this interpretation by the 11th Circuit, in which the definition of a public accommodation, the 3rd, 6th, and 9th Circuits where a "place of public accommodation" must be a "physical place" are questionable at best and each case must be viewed and decided on its own individual facts.

13. Defendants attempt to confuse the Court in its definition of a "public accommodation" but the Court should consider two requirements. ***First,*** the Defendants must qualify as a "public accommodation." The list of twelve general categories, as listed in paragraph 7 shows that the game show would qualify as a public accommodation as a facility of a **place of exhibition or entertainment**; a **place of**

**public gathering**; a **service establishment**; a **place of recreation**; possibly as a **place of education**; and finally as a **place of exercise or recreation**. The rules warn that while the list of 12 is exhaustive, **the representative examples within each category are not.** Therefore, the game show and its contestant process are a public accommodation[16]. **Secondly,** the entity (a game show) must be a private entity that affect commerce as defined in the commerce clause of the Constitution—and may not impose eligibility criteria that screen out or tend to screen out individuals with disabilities.[17]

14. Cases cited by Defendants, *Jankey*, Plaintiffs agree that having an ATM in restricted employee only area is not a public accommodation, however, only because its not being offered to the general public (in commerce). In *Stoutenborough*, Plaintiffs also agree that allowing a blackout for all was not discriminatory. Here the court did not decide if the NFL was a public accommodation, it decided whether a practice (allowing a blackout for everybody) was discriminatory. In *Brown*, the question dealt with a health and safety issue of not wearing a helmet, not whether individuals with disabilities could be excluded from a cross-country race. Lastly, Plaintiffs agree with the *Gonzales* case, that this court should look to the statute (the ADA) itself.

15. In addressing Defendants need to identify a physical structure or facility that is inaccessible, see paragraph 11. If you are screened out or eliminated from access by a policy, practice or procedure, while the barrier is not physical in nature, you are still denied the opportunity to participate. Again, Plaintiffs are willing to amend the

---

[16] and as such must make reasonable modifications in their policies, practices, or procedures when they are necessary to provide goods, services, facilities, privileges, advantages, or accommodations to disabled individuals (28 CFR 36.302(d)). Furthermore, this game show contestant process under 28 CFR 36.303 must take steps to ensure that no individual with a disability that substantially limits his or her ability to communicate is discriminated against because of the absence of auxiliary aids. Furthermore it is understood that TDDs would have to be offered if an establishment "customarily offers telephone service to its customers, clients, patients or participants on a more than an incidental convenience basis." A prime example in part 36 is where you have a building in which access is controlled by a telephone (i.e., for security measures) the entity or building facility would have to offer an effective alternative for individuals with impaired hearing or speech. **(Emphasis added)**

[17] 28 CFR 36.301.

8

complaint to cite the studios in New York or the corporate headquarters, just share with Plaintiffs where the phone recorders are located. The rule is intended to address the underlying obligation of a public accommodation to communicate effectively with customers, clients, patients, or participants who have disabilities.[18]

16. In *Parker*, *Ford* and *Weyer*, as listed in Defendants motion, page 11, the telephone (or mail) was used to communicate and sell the policies, but an aspect (usually a "pre-existing condition" requirement) was challenged as a violation of ADA. A criteria of substance not of process.

17. The Defendants far reaching narratives that *Stoutenborough* and *Brown* are highly analogous to the facts of this case are false. The Defendants are soliciting contestants (in mainstream America) to come to New York and compete in a game show. Not whether or not a participant wears a helmet[19] or not whether a blackout rule, which affects all persons, not just disabled individuals is discriminatory.

18. As to Defendants attempt to suggest Plaintiffs may "attempt to sidestep these flaws in their Amended Complaint" this is an attempt to confuse the Court and cloud the issues. All persons with a disability don't want special accommodations, they only want an equal chance. Defendants have a process for picking contestants that screen out or tended to screen out individuals with disabilities.

19. Defendants claim[20] that "Any claims by deaf and hearing impaired plaintiffs against Defendants should be dismissed because those claims are governed by Title IV of the ADA". Wrong and false. Title IV is an obligation by the States to provide telecommunication relay services which would enable individuals with speech and/or hearing disabilities to communicate with individuals who do not have special equipment.

---

[18] 28 CFR 36.303.

[19] Which would affect both a disabled participant or a non-disabled participant equally.

[20] On Defendants page 14.

If the Defendants had a person answering the phone in the process instead of a recording, that person could utilize the relay service to communicate with the disabled community.  The Defendants other option is to provide their own TDD/TYY device to communicate effectively.  The Defendants under Title III have the burden to take steps to ensure that no individual with a disability that substantially limits his or her ability to communicate is discriminated against because of the absence of auxiliary aids.[21] Plaintiffs agree with the Defendants that the Plaintiffs would also have the option to file a claim with the agency of jurisdiction[22], regarding a television stations licence to broadcast, and broadcasting in a non-discriminatory manner, but that does not eliminate the Title III requirements.  Lastly, if Defendants see a claim under Title IV, in this action, they did not list them under their Summary of Claims found on page 4 of Defendants' Motion.

20.  The Defendants, on page 15 state that "the claims of this class of plaintiffs reach beyond the scope of Title III."  Are not the volume of calls, the equipment necessary for or in the adaptability for servicing millions of callers a question of fact under Title III, not Title IV?  Review the standards of review under Rule 12(b)(6).

21.  In addressing Defendants claims regarding the blind or [upward] mobility impaired, on Defendants page 17, the Plaintiffs claims are clear, the blind community can not visualize, with the speed and accuracy necessary to equally compete as someone who can see the buttons on a phone.  Likewise, the "upward mobility impaired" not as the Defendants state as only the "mobility impaired" equal.  There is no claim regarding the "mobility impaired" they can utilize a phone and are not limited.  However, an "upward mobility impaired" individual, one who has no or very limited movement in his or her upper extremities is not able to equally compete.  Therefore,

---

[21] 28 CFR 36.303.

[22] the Federal Communications Commission.

have an automated system and requiring a participant push buttons on a phone are discriminatory and would constitute as a barrier to this population.  So what should the Defendants do?  Simple answer, the Defendants have AT & T as its major sponsor, and if you have ever called regarding your AT & T credit card or phone/cable service, they have incorporated into their automated phone system, voice as well as touch tone options for inputting your account number or whatever.  As discussed, why is this not an option?  This accommodation would eliminate the blind and upward mobility impaired community from the complained of discrimination.

22.  Regarding architectural or physical barriers, page 18 of Defendants motion, please note that they are combined with the word "communication".  Done so because, so communicational barriers are also architectural in nature.  But, until Round I is made accessible, no determination can be made as to physical or architectural barriers.  They would be included in Count IX of the Amended Complaint.

23.  Regarding the Civil Rights Act of 1991 (Count VII), note the case in the footnote 8 in Amended Complaint *In Kolstad v. American Dental Ass'n.*, the 1991 Civil Right Act allows punitive damages to be awarded in cases filed under the ADA where a reasonable jury could have concluded that intentional discrimination, in the face of a perceived risk that its actions would violate federal law.  The Defendants in this action since the inception of this game show, August of 1999, have refused to accommodate or even attempt to comply with the requirements of the ADA.  By this continued delay and refusal to at least make the process of becoming a contestant to be equally utilized by certain segments of the disabled community, this continued non-compliance could be construed as intentional discrimination.  Subjecting the Defendants to more that just injunctive relief.   Therefore, Count VIII - Negligent Infliction of Emotional Distress, Plaintiffs would also be applicable.

24.  Addressing Count IX - Miscellaneous Violations or Enforcement, Defendants

11

seem to be missing the point of this entire lawsuit. Plaintiffs' initiated this action to ensure ADA compliance and minimize the costs for all parties. So until the Plaintiffs can enter the front door, who knows what barriers, if any, need to be addressed. If no further ADA issues need addressing, then Plaintiffs agree, nothing further will be warranted.

WHEREFORE, Plaintiffs goal in this litigation is to ensure that individuals with disabilities, as presented here in this action, only be allowed to equally participate in the process and be a part of mainstream America, and enjoy life like any other person. In conclusion, for the reasons stated, Plaintiffs respectfully urge this Court deny Defendants' Motion to Dismiss.

Respectfully submitted, **July 19, 2000**

MICHAEL F. LANHAM, Esquire
MICHAEL F. LANHAM, P.A.
Biscayne Building, Suite #1102
19 West Flagler Street
Miami, Florida 33130
(305) 358-7646
fax (305) 358-8749

By _____
MICHAEL F. LANHAM
Florida Bar No.: 0935824

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing sent by United States mail this 19th day of July, 2000 to: **Ronald M. Rosengarten and/or Robert S. Fine**, Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131.

By: _____
MICHAEL F. LANHAM, Esquire
Florida Bar No.: 0935824
mflpa@hotmail.com