UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX FILED

AUG 14 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

SERGIO RENDON, *et al.*,    )
                            )
    Plaintiffs,             )
                            )
v.                          )   CASE NO. 00-00830-CIV-MORENO
                            )   Magistrate Judge Dubé
VALLEYCREST PRODUCTIONS, LTD.,  )
and AMERICAN BROADCASTING   )
COMPANIES, INC.,            )
                            )
    Defendants.             )
_____)

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Defendants, Valleycrest Productions, Ltd. ("Valleycrest") and American Broadcasting Companies, Inc. ("ABC"), file their reply to Plaintiffs' Response to Defendants' Motion to Dismiss ("Plaintiff's Response").

### I.

### THE "PUBLIC ACCOMODATION" QUESTION

#### A.

The recent decision of the Eleventh Circuit in *Stevens v. Premier Cruises, Inc.*, 2000 WL 79978 (11th Cir. June 22, 2000), upon which decision plaintiffs place significant reliance, Plaintiff's Response at 7, provides no support for plaintiff's claims against Valleycrest and ABC. Looking *solely* to the four corners of the Amended Complaint — as plaintiffs concede the Court must, Plaintiffs' Response at 2 — it is seen that plaintiffs' "public accommodation" claim arises from their alleged denial of "access" to the qualifying rounds for participation in the television show "Who Wants to be a Millionaire" (the Show), due to the use of an automated telephone system for qualifying rounds. Amended Complaint at ¶14. The first

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA MCLEAN CHICAGO BOSTON PHOENIX WILMINGTON
SÃO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE



question presented for the Court's determination on defendants' motion to dismiss is whether plaintiffs have alleged a denial of access to "a place of public accommodation" under 42 U.S.C. § 12182(a). See Defendants' Motion to Dismiss at 5-14.

*Stevens* is of no assistance to plaintiffs. The question addressed by the Eleventh Circuit in that case was whether those portions of a cruise ship that would otherwise qualify as places of public accommodation under 42 U.S.C. § 12181(7), *e.g.,* "places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift shops, gymnasiums, and health spas," are exempted from Title III of the ADA solely because those facilities are located on a ship, rather than on dry land. 2000 WL 799798 at *3. While recognizing that the Congress may well not have envisioned application of the ADA to cruise ships when Title III was enacted, the Court held that Title III nonetheless would apply to "public accommodations" located on ships:

> [A] public accommodation aboard a cruise ship seems no less a public accommodation just because it is located on a ship instead of upon dry land. .... Very important, Congress made no distinctions — in defining "public accommodation" — based on the physical location of the public accommodation. We conclude, therefore, that those parts of a cruise ship which fall within the statutory enumeration of public accommodations are themselves public accommodations for the purposes of Title III.

*Id.* at *3 (footnote omitted).

It is difficult to discern how plaintiffs might believe that this holding helps their claim. Valleycrest and ABC have *not* asserted that Title III is inapplicable to any particular locus in which otherwise-protected places of public accommodation are present, but only that plaintiffs have failed to allege a denial of access to *any* "place of public accommodation" by virtue of the Show's use of an automated telephone system.

### B.

*Stevens* is instructive, however, insofar as the Court noted that deference should be given to the Justice Department's regulations under Title III, *Stevens* at *3 n.6, because the

2

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA MCLEAN CHICAGO BOSTON PHOENIX WILMINGTON
SÃO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

regulations upon which defendants have relied in their motion to dismiss impose upon plaintiffs the burden to allege (and ultimately to prove) that they have been denied access to all, or any portion, of a "facility." See Defendants' Motion to Dismiss at 7. The broad scope of the ADA notwithstanding, the 12 categories of public accommodations set forth in Section 12181(7) and 28 C.F.R. § 36.104, see Defendants' Motion to Dismiss at 7-8, are exhaustive. E.g., *Florida Paraplegic Association, Inc. v. Miccousukee Tribe of Indians of Florida*, 166 F.3d 1126, 1128 (11th Cir. 1999).[1]

Plaintiffs attempt to shoehorn their claim into Title III by arguing that *the Show* qualifies as a "public accommodation," *i.e.*, as a "place of exhibition or entertainment," 42 U.S.C. § 12181(7)(C), a "place of public gathering," 42 U.S.C. § 12181(7)(D), a "service establishment," 42 U.S.C. § 12181(7)(F), a "place of recreation," 42 U.S.C. § 12181(7)(I), a "place of education," 42 U.S.C. § 12181(7)(J), or a "place of exercise and recreation," 42 U.S.C. § 12181(7)(L). Plaintiffs' Response at 5. The Show may well fit in one or more of these categories — but plaintiffs make *no argument* that they have been denied access to *the Show*. That is, plaintiffs do not assert that there are barriers to the entry of disabled persons into the auditoriums or studios in which the Show is recorded (or, for that matter, that they cannot obtain access to the *broadcasts* of the Show).

In *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580 (6th Cir.), *cert. denied*, 516 U.S. 1028 (1995), the Sixth Circuit held that the NFL could not be compelled to make available otherwise-blacked-out broadcasts of football games to hearing-impaired individuals, although recognizing that football games are "*played* in a 'place of public accommodation" to which access must be allowed, *id.* at 583, because:

> The discrimination against which the statute is directed is based on the practices or procedures of *the public accommodation itself* which may deny the

---

[1] Thus, as the Court held in *Stevens,* those portions of cruise ships that would not otherwise qualify as "public accommodations," *e.g.,* the bridge, engine room, and crew's quarters, are beyond the scope of Title III. *Stevens* at *3 n.5.

handicapped equal access to a service which that accommodation offers. The televised broadcast of football games is certainly offered through defendants, but *not as a service of public accommodation.* It is all of the services which the public accommodation offers, *not all the services which the lessor of the public accommodation offers* which fall within the scope of Title III.

*Id.* at 582-83 (emphasis supplied).

"Under the plain meaning of Title III, a public accommodation is *a physical place* and therefore the 'goods, services, facilities, privileges, advantages, or accommodations' refer to '*what these places of public accommodation provide.*'" *Menkowitz v. Pottstown Memorial Medical Center,* 154 F.3d 113, 129 (3d Cir. 1998) (citations omitted; emphasis supplied). In other words, there must be a nexus between the *physical place of accommodation* and the alleged discrimination. *Weyer v. Twentieth Century Fox Film Corporation,* 198 F.3d 1104, 1114-15 (9th Cir. 2000); *Parker v. Metropolitan Life Insurance Company,* 121 F.3d 1006, 1011 (6th Cir. 1997), *cert. denied,* 522 U.S. 1084 (1998); *Ford v. Schering-Plough Corp.,* 145 F.3d 601, 613 (3d Cir. 1998). Plaintiffs do not allege in the Amended Complaint any such nexus — and all but admit that they cannot do so, as they ask the Court to force defendants to "share" with them "where the phone is answered ... and/or where in New York the show is taped." Plaintiffs' Response at 7. Their claims, however, must stand or fall on the facts as alleged in the Amended Complaint. In the absence of a nexus between the actual place of accommodation and the alleged discrimination, those claims cannot survive a motion to dismiss.

### C.

As plaintiffs ultimately concede, their claim devolves to an assertion that they have been "denied *the opportunity to participate*" in the Show's contests - denied access to a "process" - as opposed to access to a place of physical accommodation. Plaintiffs' Response at 5,8. That is, there are no barriers to plaintiffs' access to *the Show,* either in person or as

broadcast, but plaintiffs assert that they cannot, due to their disabilities, *participate as potential contestants*. Amended Complaint at ¶4; Plaintiffs' Response at 8.

The decision in *Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 959 F.Supp. 496 (N.D. Ill. 1997), speaks directly to this issue.[2] The court rejected the plaintiff's Title III claim, arising from the plaintiff's exclusion from a bicycle race due to his alleged inability to wear a helmet. *Id.* at 498-99. The plaintiff did not allege that "he was denied access to a physical place," but instead that "he was denied a chance to *participate* in the race," an allegation that the court held "does not meet the definition of public accommodation." *Id.* at 499. To the same effect is *Ellit v. U.S.A. Hockey*, 922 F.Supp. 217, 223 (E.D. Mo. 1996). Here, what plaintiffs admittedly contend is *not* that they cannot gain access to the physical place in which the Show is presented, but that they cannot participate *as contestants* — a circumstance that is utterly *unconnected* to an actual place of public accommodation. *Matthews v. National Collegiate Athletic Association*, 79 F.Supp.2d 1199, 1205-06 (E.D. Wash. 1999).

## II.

## TITLE IV OF THE ADA

### A.

Plaintiffs now eschew any claim under Title IV of the ADA, seemingly because they acknowledge the unavailability of a private action against Valleycrest and ABC under 47 U.S.C. § 225, Plaintiffs' Response at 10, as explained in the Motion to Dismiss at 16-17. But plaintiffs nonetheless persist in asserting that the claims that are unavailable under Title IV can be raised as *Title III* claims, arguing that Title III requires defendants to put into place the means by which disabled individuals can use telephone services to participate as potential contestants. Plaintiffs' Response at 10.

---

[2] Contrary to plaintiffs' argument, the court in *Brown* did *not* address *only* a "health and safety issue of not wearing a helmet," Plaintiffs' Response at 8, as will be set forth in the text.

Plaintiffs have no choice but to make this strained — and, ultimately, incorrect — argument. The very *means* by which defendants allegedly have been denied "access" to plaintiffs is *the automated telephone system* used in the qualifying rounds for those wishing to appear as contestants on the Show.[3] Thus, if, as will be shown below, the entire *question* of telephone "access" is left to regulations promulgated under *Title IV*, plaintiffs have no claim for relief — even if they could satisfy the "public accommodation" requirement.

### B.

In promulgating its regulations under Title III, the Department of Justice noted its receipt of comments concerning automated telephone systems and announced its determination that "it is more appropriate for the Federal Communications Commission to address these issues in its rulemaking *under Title IV.*" Appendix B to Part 36 - Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, § 36.303 (emphasis supplied). Pursuant to 47 U.S.C. § 255, the Architectural and Transportation Barriers Compliance Board promulgated such regulations under the Telecommunications Act, in which regulations the burden of compliance was placed *solely on manufacturers of telephone equipment.* 36 C.F.R. § 1193.21-.43 (1998). Indeed, Section 1193.22 and 1193.23 expressly provide that *manufacturers* shall develop telecommunications equipment that complies with Section 1193.31, *i.e.,* "telecommunications equipment and

---

[3] Plaintiffs' claim accordingly must be distinguished from cases in which disabled persons have been denied access to public accommodations by a private organization's decision to bar persons with particular disabilities from participating in activities in certain physical places. *E.g., Olinger v. United States Golf Association,* 55 F.Supp.2d 926, 928-32 (N.D.Ind. 1999) (disabled golfer could bring claim against PGA based on exclusion from professional golf tournament of persons who cannot walk required distances), *aff'd,* 205 F.3d 1001 (7th Cir. 2000); *Bowers v. National Collegiate Association,* 9 F.Supp.2d 460, 485-90 (D.N.J. 1998) (learning-disabled athlete stated claim based on NCAA's decision to exclude academically-ineligible players from participation in events at places of public accommodation operated by NCAA); *Martin v. PGA Tour, Inc.,* 984 F.Supp. 1320, 1326-27 (D.Or. 1998) (same as *Olinger*), *aff'd,* 204 F.3d 994 (9th Cir. 2000). Here, plaintiffs have never alleged that ABC or Valleycrest *elected* to exclude *any* disabled person from participation in the Show. Rather, it is the fact of the automated telephone system that is the gravamen of plaintiffs' claim and, as will be set forth above, no claim may be raised against ABC or Valleycrest based on the use of any particular telephonic equipment.

customer premises equipment" that is "accessible to and usable by individuals with disabilities." 36 C.F.R. §§ 1193.22, 1193.23.[4]

Plaintiffs accordingly cannot save their purportedly-disavowed Title IV claim by clothing that claim in Title III garb. The Department of Justice, the agency charged with enforcing Title III through appropriate regulations, has deferred to the Federal Communications Commission under Title IV, and the regulations thereafter promulgated to govern the application of Title IV place *no obligation* on entities such as Valleycrest and ABC that choose to use an automated telephone network. Rather, such obligations are placed *only* on *manufacturers* of telephone equipment, and only manufacturers or common carriers are subject to a private action under Title IV.

## III.

## INSUFFICIENTLY-PLED CLAIMS

Defendants' Motion to Dismiss also challenges: (i) the sufficiency of plaintiffs' claims for relief on behalf of blind and mobility-impaired individuals; (ii) their claim based on defendants' alleged failure to remove architectural barriers; (iii) the claim for recovery of damages; (iv) Count VIII, alleging negligent infliction of emotional distress; and (v) Count IX, titled "Miscellaneous Violations or Enforcement." Motion to Dismiss at 17-20. In their response, plaintiffs concede that they have not raised a claim based on architectural barriers

---

[4] Every conceivable concern raised, or raisable, by plaintiffs is addressed in the regulations that have been promulgated under Title IV. Manufacturers are required to develop "at least one mode" of function to render telecommunications equipment operable: "without vision"; "with low vision and limited or no hearing"; "with little or no color perception"; "without hearing"; "with limited manual dexterity"; "without time-dependent controls," *i.e.*, eliminating a response time or providing a response time "if it can be by-passed or adjusted by the user over a wide range"; "without speech"; and "with limited cognitive skills." 36 C.F.R.§ 1193.41. In the Appendix to the regulations, it is particularly made clear that *manufacturers* are obligated to develop equipment that is operable without time-dependent controls, *i.e.*, equipment that will "[a]void any time-out situations or provide instances where the user must respond to a question ... in a set amount of time" and/or "allow the user to adjust .. or set the amount of time allotted to complete a given task." Appendix to Part 1193 — Advisory Guidance, Subpart C. Plaintiffs have simply misdirected their claim by bringing their action against Valleycrest and ABC, entities that have *no* telecommunications obligations under the ADA.

and offer no response to defendant's contention that the claim for negligent infliction of emotional distress is insufficiently pled under Florida law. Plaintiffs' Response at 11. Plaintiffs' responses on the remaining points will be addressed below.

### A.

With regard to plaintiffs' claims on behalf of blind and mobility-impaired individuals, plaintiffs assert that visually impaired individuals cannot "visualize, with the speed and accuracy necessary to equally compete as someone who can see the buttons on the phone." Plaintiffs' Response at 10. No such allegation, however, appears in the Amended Complaint. Similarly, plaintiffs' assertion that "an 'upward mobility impaired' individual, one who has no or very limited movement in his or upper extremities is not able to equally compete," *id.*, appears nowhere in the Amended Complaint. While, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the pleading is not required to set forth detailed facts upon which the claim is based," the complaint must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Plaintiffs' claims in this regard cannot satisfy the most rudimentary requirement for a valid cause of action.

### B.

The same may be said, and with yet greater force, with regard to plaintiffs' Count IX. Plaintiffs say that they "initiated this action to ensure ADA compliance" and that, "until [they] can enter the front door, who knows what barriers, if any, need to be addressed." Plaintiffs' Response at 11-12. No authority is cited to support this singular approach to pleading a claim. As noted in the Motion to Dismiss, if plaintiffs are allowed to proceed in this action, any further claims that plaintiffs may elect to bring must be brought by means of an appropriate amendment and plaintiffs must satisfy the established requirements, *e.g., Foman v. Davis,* 371 U.S. 178, 182 (1962); *Jameson v. Arrow Company,* 75 F.3d 1528, 1535 (11th Cir. 1996);

*Hester v. International Union of Operating Engineers, AFL-CIO*, 941 F.2d 1574, 1578-79 (11th Cir. 1991), for amending a complaint. They may not avoid these requirements by pleading an "open-ended" count, to be fleshed out at their pleasure.

### C.

Finally, plaintiffs assert a right to seek punitive damages under the rationale of *Kolstad v. American Dental Association*, 527 U.S. 526, 119 S.Ct. 2118 (1999). Plaintiffs' Response at 11.[5] In that decision, the the Supreme Court construed 42 U.S.C. § 1981a(b)(1) to allow for punitive damage awards in Title VII employment-discrimination cases "based solely on ... [a defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination," *i.e.*, upon a showing that the defendant discriminated "in the face of a perceived risk that its actions will violate federal law." 119 S.Ct. at 214-25. That holding has been applied to *Title II* ADA claims, *i.e.*, claims of discrimination *by employers* against disabled employees. *E.g.*, *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000).

Under the express language of 42 U.S.C. § 12188(a)(1), however, the remedies available to private plaintiffs in *Title III* ADA cases are limited to those set forth in 42 U.S.C. § 2000(a)(3)(a), which section allows *only* for equitable relief to private plaintiffs. Consequently, *no* award of damages may be sought by a private plaintiff under Title III. *Jairath v. Dyer*, 154 F.3d 1280, 1283 & n.7 (11th Cir. 1998); *Hunt v. Meharry Medical College*, 2000 WL 739551 (S.D.N.Y. June 8, 2000); *Proctor v. Prince George's Hospital Center*, 32 F.Supp.2d 820, 825 (D.Md. 1998).[6] Plaintiffs accordingly cannot seek *any* monetary damages in this action.

---

[5] There is a footnoted reference to *Kolstad* in the Amended Complaint at 12 — which reference provides the only inkling that plaintiffs are seeking punitive damages.

[6] Under the *Kolstad* rationale, "[p]unitive damages under the ADA depend not on the egregiousness of defendant's misconduct, or its callousness in denying reasonable accommodation, but instead run from a culpable state of mind regarding whether that denial of accommodation violates federal law." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375-76 (7th Cir. 2000) (citations omitted). Even if plaintiffs could

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO
SÃO PAULO FORT LAUDERDALE WEST PALM BEACH ORLANDO TALLAHASSEE BOCA RATON

## CONCLUSION

Based on the foregoing, and the reasons and authorities set forth in their Motion to Dismiss, Valleycrest and ABC request the Court to dismiss plaintiffs' Amended Complaint in its entirety for failure to state a cause of action upon which relief can be granted.

Respectfully submitted,

Elliot H. Scherker, Esq.
  Florida Bar No. 202304
Ronald M Rosengarten Esq.
  Florida Bar No. 387540
Robert S. Fine, Esq.
  Florida Bar No. 155586
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0723

*Counsel for Defendants*

By: _____
    Elliot H. Scherker

### CERTIFICATE OF SERVICE

I certify that a copy of this Reply to Plaintiffs' Response to Defendants' Motion to Dismiss was mailed on August ___, 2000 to: Michael F. Lanham, Esq., 19 West Flagler Street, Suite 1002, Miami, Florida 33130

_____
Ronald M. Rosengarten

---

(..continued)
  apply *Kolstad* to Title III claims under the ADA (which, as set forth in the text, they cannot), there is simply no present authority of any kind to support plaintiffs' claim that the producers and/or disseminators of a television quiz show can be liable for denying disabled persons "access" to participation as contestants on the show through the use of automated telephone equipment, and thus no conceivable basis for implying the existence of the requisite intent on the part of ABC and Valleycrest.